JOHN W. DOANE

*v.*

GEORGE A. FULLER.

*Opinion filed October 24, 1901—Rehearing denied December 4, 1901.*

INJUNCTION—*when bill to enjoin suit on appeal bond cannot be maintained.* The holder of notes given to him in payment for his stock in a corporation, to secure which the stock was accepted by him as collateral security under an agreement that the purchaser should procure a personal loan and pay the existing debts of the corporation, which agreement was known and consented to by the lender, cannot maintain a bill to enjoin the lender from prosecuting a suit on an appeal bond, voluntarily signed by complainant on appeal from a judgment by confession entered on a note which the lender procured to be executed in the name of the corporation for the amount due on the loan, where the bill does not allege that the purchaser of the stock is insolvent or that he is unable or unwilling to pay the notes held by complainant.

*Doane* v. *Fuller*, 88 Ill. App. 515, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This was a bill in chancery exhibited in the circuit court of Cook county, but which was held obnoxious to a demurrer and dismissed. The Branch Appellate Court for the First District affirmed the decree dismissing the bill, and a further appeal has brought the record into this court.

The only question arising is whether it was correctly ruled the bill was obnoxious to demurrer.

In substance the bill alleged that on the 13th day of June, 1894, the appellant (complainant in the bill) was the owner of 148 shares of the capital stock of the Anderson Transfer Company; that the capital stock of the company consisted of 150 shares of the par value of $100 each, of which appellant owned all but two shares; that said company then had assets of the value of $35,000 and was substantially free of debt, except an indebtedness of $6200 due to appellant's firm, and had $1200 cash in its treasury; that on said date appellant and one Frank S. Rolfe entered into a contract, whereby the appellant agreed to sell and said Rolfe agreed to buy the said 148 shares of said stock at $28,584.93; that said sum was to be paid in eleven semi-annual payments of $2598.63 each, evidenced by notes of Rolfe and to be secured by the pledge of the stock as collateral, on the express condition that Rolfe should raise $5000 and appropriate it toward the payment of the debts of the company, which sum, together with the $1200 in the treasury of the company, would discharge the indebtedness of the company and leave the same free from debt; that the appellee, Fuller, was fully advised of all the terms of the contract and expressly agreed to and with the appellant to loan Rolfe $5000 as a personal loan to Rolfe, to be used by Rolfe, as Fuller well knew and expressly agreed should be done, in the payment of the debts of the transfer company, in order that the assets of the company should be free from liability for such debts, so that appellant could accept the stock as collateral security; that appellee, Fuller, furnished the $5000 to Rolfe as a personal loan to Rolfe, and that that sum and the sum of $1200 was applied to the payment of the debts of the company and the same discharged, and that appellant sold his stock to Rolfe, taking Rolfe's notes therefor, holding the stock as collateral security for the notes; that on the 13th day

of June, 1896, for the purpose of attempting to bind the
transfer company to pay the indebtedness of Rolfe to
Fuller, and for the further purpose of defrauding appel-
lant, said Rolfe and the appellee procured a note of the
said transfer company, signed by Rolfe, as its president
and treasurer, to be executed to the appellee, purporting
to bind the company to pay the appellee $5600 thirty
days after date, and which contained a power of attor-
ney authorizing the confession of a judgment on the note;
that Rolfe paid to appellant the principal of three of the
notes given by Rolfe to appellant, aggregating the sum
of $7795.89; that afterwards, on the 12th day of February,
1897, a judgment by confession was caused to be entered
on the note in the superior court of Cook county; that
afterwards the judgment was opened and the transfer
company allowed to defend to the action, but that the
judgment by confession was ratified and confirmed by
the said superior court and on appeal was affirmed in the
Appellate Court and again affirmed on a further appeal
to the Supreme Court; that appellant became surety on
the appeal bonds given by the transfer company to per-
fect appeals to the Appellate and Supreme Courts, and
induced one George M. Pullman to sign said appeal bond
to the Supreme Court as surety by expressly agreeing
to indemnify and keep harmless the said Pullman; that
all of the property of the transfer company has been
seized and sold, wrecked and sacrificed, under executions
in this and other judgments against the company, and
that appellee has received from such sales and sacrifices
the sum of $4993.43 as payments on said judgment, and
the stock held by appellant as collateral security ren-
dered valueless and worthless; that appellee claims there
remains unpaid on said judgment by confession the sum
of $1351.74, and has instituted an action in debt in the
circuit court of Cook county on the appeal bond, against
the appellant, to recover that amount, and has filed a
claim against the estate of the said George M. Pullman,

now deceased, for the same amount; that the said judg-
ment against the transfer company was and is fraudu-
lent, inequitable and unjust as against the rights and
interests of the appellant, and that, by reason of his ex-
press agreement with the appellant that he would look
to Rolfe personally for the payment of the said sum of
money claimed to be represented by the judgment, on the
faith of which agreement the appellant was induced to
accept the stock of the company as collateral security
for the debt of Rolfe, the appellee ought to be decreed es-
topped and debarred from asserting any right, as against
appellant, to seize any property of the transfer company
under an execution on said judgment, and from prose-
cuting said action at law to recover against appellant on
said appeal bond and from prosecuting the claim against
the estate of George M. Pullman, deceased. The bill fur-
ther alleged that on the 13th day of June, 1894, and the
12th day of February, 1897, the appellant advanced and
loaned to said transfer company, in cash, the sum of
$8500; that the said money was advanced by appellant
upon the faith of said transaction between appellant and
said Rolfe and Fuller, appellee, on the 13th day of June,
1894, and upon the further assurances of the said Rolfe
and upon the statements of said Rolfe as president for
said company, in none of which did it appear that said
transfer company was indebted in any manner or form
to the appellee.

The bill prayed for an accounting, and that Fuller
and Rolfe be decreed to pay complainant whatever might
thereby appear to be due him by reason of these alleged
illegal, wrongful and fraudulent acts; that appellee be
restrained and enjoined from proceeding further in the
action in debt commenced against appellant in the supe-
rior court of Cook county on said appeal bond, and also
from prosecuting the claim filed against the estate of
said Pullman, deceased, by reason of the surety of said
Pullman on said appeal bond, and for general relief.

OTTO GRESHAM, and JOHN S. COOPER, for appellant.

TENNEY, MCCONNELL, COFFEEN & HARDING, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The demurrer operated as an admission that all material and relevant allegations of the bill are true.

As between the appellee, Fuller, and the transfer company, there was ample consideration to support the note given by the transfer company to Fuller, on which the judgment by confession was entered. Save as to the rights of appellant, as holder of the shares of stock hypothecated to him, appellee was entirely free to contract with the transfer company for the payment by the company of the moneys appellee had advanced to Rolfe, for the reason the fact such moneys were appropriated by Rolfe to the payment of the indebtedness of the company supplied the requisite consideration for the promise to re-pay the same. We think that under the allegations of the bill appellant, as between himself and appellee, because of the agreement between them, as set forth in the bill, had the right to insist the interest created in his favor in the assets of the transfer company by the hypothecation of the stock of the company was superior, in equity, to the rights of appellee to procure re-payment out of the assets of the company of the moneys advanced by him to Rolfe, but in all other respects either party was free to deal with the transfer company as with other corporations or persons, and no such equity existed in favor of the indebtedness of the transfer company to the appellant, arising out of other transactions than that in which the alleged agreement between appellant, Rolfe and the appellee was made. As between the transfer company and appellee, Fuller, the $5000 advanced by appellee to Rolfe may fairly have been regarded as the indebtedness of the transfer company, but as against the

rights and interests of the appellant the indebtedness to appellee, so far as appellee is concerned, was that of Rolfe individually, and not of the company. Appellee knew, when he parted with his money, that it was to be used by Rolfe in paying the debts of the transfer company, in order the stock of the company should be rendered more valuable by the discharge of such indebtedness of the company, and, being more valuable, would be accepted by appellant as collateral security for the indebtedness of Rolfe to the appellant. Appellee knew the appellant required, as a condition upon which he would accept the stock of the company as collateral security for the indebtedness of Rolfe to him, that the debts of the company should be discharged by Rolfe without depleting the assets of the company. The value of the stock depended on the assets of the company, and the appellee knew, according to the allegations of the bill, before he parted with his money, that it was the contract between the appellant and Rolfe that the money furnished by appellee to Rolfe was to Rolfe in his individual capacity and as a personal loan to him, and that (as is clearly alleged in the bill) appellee expressly agreed that such should be the character of the loan, and that he made that agreement for the purpose of inducing appellant to accept the stock as collateral security.

The allegations of the bill being conceded to be true, upon equitable principles appellee should not be allowed to maintain an action at law to recover from the appellant a portion of his judgment against the transfer company if the appellant would suffer loss by reason of an inability to collect the amount of his indebtedness due from Rolfe. But the fatal defect in the bill is, that it does not affirmatively appear that the appellant has sustained or will sustain the loss of any part of such indebtedness due him from Rolfe. The bill avers that since Rolfe contracted the said debt to the appellant said Rolfe has paid to the appellant three of the notes,

amounting to $7795.89, and there is no averment that Rolfe is insolvent, unable or unwilling to pay the remainder of said notes, or even that he has been asked to pay such of them as are due. The only ground justifying the equitable interference prayed for in the bill is, that legal remedies are unavailable and that it is necessary equitable aid should be extended to protect the complainant from loss. In the absence of an allegation to the contrary it is to be assumed that Rolfe is solvent, and that being true, there is no reason the appellant should invoke or be granted the extraordinary remedies in equity to prevent the appellee from recovering the amount due him from the transfer company. Appellant voluntarily became surety on the appeal bonds, and the mere fact that Fuller agreed, when contracting the original debt represented by the appeal bond, that such debt should, as between himself and appellant, be regarded as the debt of Rolfe to Fuller, should not avail to entitle the appellant to equitable aid to relieve him from liability to answer his obligation as such surety, unless such equitable relief is essential to protect the appellant from loss by reason of the indebtedness of Rolfe to him. If Rolfe is solvent no loss will come to appellant by reason of the debt intended to be secured by the stock of the transfer company. This element of the case is not referred to in appellant's brief in chief. In the brief of appellee much stress is laid on the omission of an allegation in the bill as to the financial condition of Rolfe, as being, within itself, sufficient to justify the action of the court in sustaining the demurrer. The appellant has filed a reply brief, but again entirely ignores the question. If the appellant had presented his bill before the assets of the transfer company had been appropriated to the payment of the judgment in favor of appellee a different question would have been presented. The situation then would have been, that appellant held unmatured notes against Rolfe, to secure which, so far as the

appellee was concerned, he held the assets of the transfer company through the medium of the stock lodged in his hands as collateral security, and he might have invoked the aid of chancery to preserve intact his securities, though his debtor be then solvent, for the reason the financial condition of his debtor might change before the indebtedness would mature. But he did not invoke the aid of the court until the entire assets of the transfer company had been removed beyond the power of the court to restore them to him. If his debtor was then solvent no ground of equitable jurisdiction existed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*